
Rebecca J. Hozubin, Esq.
WILKERSON HOZUBIN
310 K Street, Suite 405
Anchorage, AK  99501
Phone:  276-5297
Fax:  276-5291
Email: Rebecca@wilkersonlaw.net
AK Bar No.: 9806016

Attorneys for Leader Insurance Companies

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| LEADER INSURANCE COMPANIES,                )<br>                                                                              )<br>         Plaintiff,                                                          )<br>                                                                              )<br>         vs.                                                                 )<br>                                                                              )<br>NAI SAEPHAN as Personal                          )<br>Representative of the Estate                         )<br>of Ann Saephan                                              )<br>                                                                              )<br>         Defendant, Counter-Claimant,         )<br>           And Third-Party Plaintiff,              )<br>      vs.                                                                  )<br>                                                                              )<br>MARIE BROWN AND JAMIE MOORE)<br>                                                                              )<br>         Third-Party Defendants.                    )<br>_____) | Case No. A04-0151 CV(JKS) |

**REPLY TO OPPOSITION TO MOTION FOR**
**PARTIAL SUMMARY JUDGMENT RE FAILURE TO OFFER**
**<u>AND OPPOSITION TO CROSS-MOTION</u>**

There is no dispute that the policy language as at bates number 100101[1] was not the appropriate underinsured motorist coverage language following the court's decision in <u>Progressive v. Simmons</u>, 953 P.2d 510 (Alaska 1998).

Prior to the <u>Simmons</u> decision, the Alaska Legislature had adopted a "reduction" approach to UIM coverage. This approach allowed a purchaser of UIM insurance to choose in advance the limits of coverage that would apply in the event of future injuries caused by a negligent motorist. An insured was guaranteed compensation in the amount selected for UIM coverage, but no more.[2]

Accordingly, under former AS 28.20.445(a) and (b), the maximum amount of an insurer's liability on any given UIM policy was determined by subtracting from the UIM policy limits any amount paid or payable to the insured from other sources, including liability coverage. This statutory scheme precluded an injured person from combining, or "stacking," liability and UIM coverages.[3]

The Legislature also imposed a definitional "trigger" for UIM coverage. AS 28.20.445(h) defined an "underinsured motor vehicle" as a car with liability coverage for bodily injury that "(1) is less than the limit for ... underinsured motorists coverage under the insured's policy; or (2) has been reduced by payments to persons other than an insured, injured in an accident, to less than the limit for ... underinsured motorists coverage under the insured's policy." Under that statutory provision, UIM coverage was

---

[1] Exhibit E to Saephan's Opposition to Motion for Summary Judgment at Dockets 61-62.
[2] <u>See</u> discussion in <u>Simmons</u>, 953 P.2d at 514, 517.
[3] <u>Id</u>. at 514.

2

not "triggered" if the available liability insurance was equal to or greater than the insured's available UIM coverage.

In 1990, the Alaska Legislature amended AS 28.20.445 (a) and (b), allowing UIM payments to be "excess to" available liability coverage to the extent of actual damages or combined policy limits, whichever was less.[4]

But, at the time it adopted the "excess to" approach, the Legislature left intact the trigger provision's definition of "underinsured motor vehicle" set out in AS 28.20.445(h). On their face, the two provisions did not conflict. The Federal District Court in Tumbleson ruled that there was no conflict between the text of the old and new statutory provisions.[5] Thus, although UIM coverage could now be stacked on top of bodily injury liability coverage once coverage was triggered, the Alaska Statutes continued to provide, by definition, that no coverage was triggered unless the available liability coverage was less than the UIM limits.[6]

---

[4] See discussion, id., at 514-15 [discussing 1990 amendments to AS 28.20.445 (a) and (b)].

[5] See Colonial Ins. Co. of California v. Tumbleson, 873 F.Supp. 310, 318-19 (D. Alaska 1995) (applying Alaska law, finding that it is reasonable to read both the amended section (b) and old section (h) of AS 28.20.445 together without contradiction); *accord* Shelby Mutual Insurance Co of Shelby, Ohio v. Smith, 556 So.2d 393 (Fla. 1990) (finding that Florida's definition of underinsured motor vehicle was not implicitly repealed by an amendment substituting excess coverage for reduction coverage because the plain meaning of the statutory provisions were not in conflict). Both the Shelby and Colonial cases are cited and discussed in Simmons, 953 P.2d at 520, n. 10.

[6] GEICO's UIM policy provisions and UIM selection forms are already in the record in this case, attached to GEICO's Statement of Undisputed Facts (February 1, 2001). By reference, GEICO hereby incorporates that pleading and the accompanying documents into this motion.

3

Two months after Tumbleson, a different federal district court judge issued the unpublished Kvasnikoff[7] decision in which he disagreed with the Tumbleson reasoning and held that coverage should be triggered. Thus, there was disagreement by the courts as to what constituted underinsured motorist coverage.

Then, in the spring of 1998, the Alaska Supreme Court in Simmons ruled that the definition of underinsured motor vehicle in AS 28.20.445(h) was in conflict with the intent of the Alaska Legislature when it adopted the amended versions of subsections (a) and (b). Accordingly, the Court found that the definition of underinsured motor vehicle in AS 28.20.445(h) was impliedly repealed.[8] The reduction method of UIM was no longer, and UIM was now stackable.

Unfortunately, the Court's order did not automatically and uniformly change policy language in Alaska. Insurers were still issuing policies with the wrong language because prior to being able to issue policies with the proper language, the new policies had to be approved by the Division of Insurance through a long process.[9] This meant that the policies first needed to be rewritten or amendatory endorsements written, submitted

---

[7] As an unpublished decision, it should "not be cited in briefs or referred to in argument." District of Alaska Local Rule 7.1(c).
[8] Simmons, 953 P.2d at 519-20.
[9] AS 21.42.120.

4

for approval,[10] and once approved, then be distributed beginning on the date approved by the Division of Insurance. Thus, in the interim, prior to approval, insurers had no choice but to continue to send out the policies with the incorrect language. Insurers would do this but not enforce the old language.

That is precisely what occurred in this case. A UIM claim was never denied based on the reduction language in the policy. U/UIM claims in this case were thought not to exist because there was no contact between the insured vehicle and any other vehicle. Thus, while the reduction language was inappropriate there are no damages and no claim because it was never enforced or attempted to be enforced.

## I. Facts

On Saturday, November 8, 2003, Saephan was a front seat passenger in Olivo's car.[11] Olivo was the driver of his Honda Civic vehicle that evening. There was a third person in the back seat of the car.

At approximately 9:00 p.m., the Olivo vehicle was stopped in the parking lot of the Space Station, an arcade in Anchorage, Alaska. The vehicle was facing south with the front of the car pointed toward the Space Station; the rear of the car pointed at 27th Avenue. As the Olivo vehicle was readying to leave the Space Station, shots were fired

---

[10] In the case of the submissions and approvals, an approval could take months because of the back and forths between the Division and the insurer. The Division may disapprove one small subsection of the policy requiring either an explanation and support of why it should be approved or rewriting. It is not typical for a policy to be approved on first submission.

[11] All of the facts are supported by evidence in Leader's Motion for Summary Judgment at Docket 45, and those exhibits will not be attached herein in an effort to save the court an excessively large filing.

into the vehicle from behind the car.  Saephan was shot in the back of the head and died as a result.

There is no evidence of whether the shooter was in a vehicle or on foot at the time of the shooting.  If the shooter was in a vehicle, there is no evidence whether the vehicle was traveling east or west and there is no evidence to state whether it was the driver or a passenger that was the shooter.

William France, a witness, said he heard four shots as he was approaching the Space Station, but had no further information.

## II.  Standard of Review

Summary judgment "shall be rendered forthwith in pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, so that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[12]  Summary judgment is appropriate when, viewing the evidence in a light most favorable to the non-moving party, the court concludes that there are no genuine issues of material fact with respect to the claims.[13]  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[14]  The moving party has the initial burden of showing the absence of a genuine issue of fact for trial.[15]  If the moving party meets its initial

---

[12] Fed.R.Civ.P. 56(c).
[13] Taybron v. City and County of San Francisco, 341 F.3d 957, 960 (9th Cir. 2003).
[14] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[15] Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial."[16]

### III. Leader Denied This Claim Because There Was No Accident, and No Contact Between Vehicles.

A UIM claim was never denied based on the reduction language in the policy. U/UIM claims are thought not to exist in this case because there was no contact between the insured vehicle and any other vehicle. This position is confirmed by Leader's employee log notes for the two claims asserted.[17] This is further confirmed by the reservation of rights letter sent to Mr. Olivo stating, "From our investigation there was no contact with an uninsured/underinsured motor vehicle. We do not even know if the shooter was even in a vehicle."[18] Additionally, this is further confirmed in a letter to the estate's attorney from Leader dated May 4, 2004, "Questions have arisen regarding whether or not this incident would qualify for coverage under an auto policy since the cause of death was the result of a gunshot wound and not injuries sustained in an auto accident."[19] Even the medical payments coverage was subject to a reservation of rights and subsequently denied because the injuries were "not related to the vehicle being struck by an automobile."[20] Finally, this is confirmed by the Amended Complaint in this matter. In an effort to resolve coverage in this case, Leader filed this declaratory judgment action asking the court to declare that there is no coverage because the injuries did not arise

---

[16] Id. at 325; Anderson, 477 U.S. at 248.
[17] See Exhibit 6.
[18] Exhibit 7.
[19] Exhibit 8.
[20] Exhibits 9 and 10.

from the "ownership, maintenance or use" of the vehicle or did not occur because of an "accident" and was there no requisite physical contact between the vehicle carrying the deceased and any other vehicle[21] -- in other words, all the arguments that are the subject of Leader's Motion for Summary Judgment that is currently ripe before this court.

The evidence is clear in this case. The estate is not entitled to summary judgment on this issue because there are no damages resulting for the retained reduction language in the policy because it was never enforced. Leader requests a ruling that while the language does not comply, Leader made no attempt to enforce the reduction language, as the denial was based on other language in the policy, and therefore the estate has no claim based on the reduction language because there are no damages for the same.

DATED this 24th day of July, 2006.

                              WILKERSON HOZUBIN

               By: s/Rebecca J. Hozubin
                   310 K Street, Suite 405
                   Phone: 907 276-5297
                   Fax: 907 276-5291
                   E-mail: Rebecca@wilkersonlaw.net
                   Attorneys for Plaintiff Leader
                   AK Bar No. 9806016

---

[21] Filed August 18, 2005.

CERTIFICATE OF SERVICE
I hereby certify that on the
24th day of July, 2006, a true
and correct copy of the foregoing
was electronically served and mailed
to the following:

Robert D. Stone, Esq.
500 L Street, Suite 303
Anchorage, AK  99501

Douglas G. Johnson, Esq.
821 N Street, Suite 205
Anchorage, AK  99501


WILKERSON HOZUBIN

By: s/Rebecca J. Hozubin
7500/127/plead/Motion to Dismiss- Gonzalez- Reply