Rebecca J. Hozubin, Esq.
WILKERSON HOZUBIN
310 K Street, Suite 405
Anchorage, AK  99501
Phone:  276-5297
Fax:  276-5291
Email: Rebecca@wilkersonlaw.net
AK Bar No.: 9806016

Attorneys for Leader Insurance Companies

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| LEADER INSURANCE COMPANIES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| NAI SAEPHAN as Personal Representative of the Estate of Ann Saephan | ) ) ) |
| | ) |
| Defendant, Counter-Claimant, and Third-Party Plaintiff | ) ) ) |
| vs. | ) |
| | ) |
| MARIE BROWN AND JAMIE MOORE, | ) |
| | ) |
| Third-Party Defendants | ) |
| | ) Case No. A04-0151 CV (TMB) |

**OPPOSITION TO MOTION TO SET ASIDE ENTRY OF DEFAULT**

Defendant attempts to shift the blame for not answering the Amended Complaint in a timely fashion by alleging that plaintiff and its representative were never available to discuss

settlement this fall.[1]  First, this does not explain why defendant was unable to file an Answer since September 20, 2005, almost one and a half years ago, when the court accepted the amendment.  Or why, when this court ordered defendant one year later, in September 2006, to file her Answer, she was unable to do so, after two additional extensions were granted.  The last extension gave defendant until November 27, 2006 to file her Answer, yet she did not do so until January 2, 2007, despite urging by plaintiff to file earlier than that.[2]

Second, contrary to defendant's representations, settlement discussions were ongoing this fall.  First, defendant asked about the possibility of mediation.  On November 1, 2006 plaintiff informed defendant it was not interested in mediation, but if plaintiff wanted to make a reasonable settlement offer it would consider the same.[3]  On November 15, 2006 defendant made a settlement offer.[4]  On November 28, 2006 that offer was rejected by plaintiff, and a counteroffer was made to resolve this case.[5]  By December 13, 2006 settlement negotiations had ceased, with the ball in defendant's court, and plaintiff reminded defendant

---

[1] Defendant also attempts to shift blame to plaintiff by alleging that the Motion for Entry of Default was filed and entered while her attorney's office was closed for an extended period of time over the holidays.  Neither the court nor plaintiff was aware of this closing, as defendant did not provide notice of same.
[2] See Docket 119, 120, and 122.
[3] Exhibit 1.
[4] Exhibit 2.
[5] Exhibit 3.  At the same time, an identical offer was made to resolve Estate of Saphan v. Olivo, Case No. 3AN-05-13024 CI.

to file an Answer.[6]  Defendant's attempt to shift blame is merely a red herring designed to disguise her own culpable conduct.

As this court is well aware, there have been longstanding issues with defendant's failure to respond to various matters in a timely fashion in this case.  The following outline demonstrates some of these issues:

- July 22, 2004, plaintiff files this action;
- January 19, 2005, defendant answers;
- August 23, 2005, Docket 45, plaintiff files Motion for Summary Judgment;
- October 3, 2005, Docket 88, the court orders defendant to respond to the Motion for Summary Judgment by May 1, 2006, allowing defendant to conduct more discovery;
- Defendant conducts no discovery during that seven months;
- Defendant never files an opposition after May 1, 2006;
- September 21, 2006, Docket 21, the court orders defendant to Answer the Second Amended Complaint within twenty days;
- December 22, 2007, Docket 117, plaintiff files a Motion for Entry of Default;
- Defendant never opposes;

---

[6] Exhibit 4.

- December 27, 2006, the Clerk of Court enters default;

- December 27, 2006, Docket 122, plaintiff files a Motion for Entry of Default Judgment;

- Defendant never opposes.

- January 2, 2007, Docket 123, defendant files an Answer;

- January 2, 2007, the court instructs defendant, after she filed her Answer, that she needs to move to set aside the default; and,

- February 12, 2007, six weeks later, defendant moves to set aside the default.

The granting or denial of a motion to set aside a default is within the discretion of the trial court,[7] and should only be set aside for "good cause shown."[8] Defendant failed to demonstrate good cause, and the court should decline to set aside the default.

There are three factors to be considered in determining whether to set aside a default. "Those factors are: whether the defendant's culpable conduct led to the default; whether the

---

[7] Savarese v. Edrick Transfer & Storage, Inc., 513 F.2d 140, 147 (9th Cir. 1975), citing Martella v. Marine Cooks & Stewards Union, 448 F.2d 729 (9th Cir. 1971) (rule 60(b)), cert. denied, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 248 (1974); Madsen v. Bumb, 419 F.2d 4 (9th Cir. 1969) (rule 55(c)); 10, 11 C. Wright & A. Miller, Federal Practice & Procedure ss 2693, 2857 (1973). In Savarese the defendant failed to file an answer and a default was entered. The trial court found that the excusable neglect pled by defendant was not sufficient to overturn the Entry of Default, and the Ninth Circuit agreed.
[8] F.R.C.P. 55(c).

defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff."[9] "[T]he [good cause] factors are disjunctive," and, therefore, "the district court [is] free to deny the motion 'if any of the three factors was true.'"[10] Knowing a Motion for Entry of Default had been filed, failing to respond, knowing default has been entered, and waiting a month and a half to move to set it aside constitutes culpable conduct.[11]  The court should decline to set aside the default.

I.  Defendant's Conduct Was Culpable And There Was No Excusable Neglect

In Franchise Holding II, LLC. v. Huntington Restaurants Group, 375 F.3d 922 (9th Cir. 2004), the court thoroughly reviewed each of the factors. First, the court reviewed whether there was any culpable conduct.

> The district court found that, due to the high stakes involved, HRG's failure to seek an extension of time for filing a responsive pleading went to HRG's "culpable conduct." HRG disputes this, arguing that the parties had reached a side-agreement to extend the filing deadlines while the parties were in negotiations. Franchise Holding denies that such an agreement ever existed. Unfortunately for HRG, even if the parties did enter into a side-agreement, HRG remains culpable for the entry of default.

---

[9] TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001).
[10] Mood v. Global Diamond Resources, Inc., 125 Fed.Appx. 113, 114 (9th Cir. 2005), quoting Franchise Holding II, LLC v. Huntington Rests. Group, Inc., 375 F.3d 922, 926 (9th Cir.2004) (citation omitted).
[11] Mood, 125 Fed.Appx. at 114.

5

> The side-agreement alleged by HRG provided that Franchise Holding would not pursue litigation while negotiations were continuing in good faith. Franchise Holding, however, explicitly warned HRG that negotiations had broken down and that it was proceeding with litigation. Thus, under the terms of the alleged side-agreement, HRG was on notice that Franchise Holding would pursue litigation. HRG nevertheless failed to file anything with the district court until after Franchise Holding began collecting on the default judgment. If a defendant "has received actual or constructive notice of the filing of the action and failed to answer," its conduct is culpable. Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 690 (9th Cir.1988) (quoting Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir.1987))."[12]

The Franchise court also discussed the defendant's alternative argument of "excusable neglect."

> HRG alternatively argues that the district court should have set aside the default judgment under Rule 60(b) for excusable neglect. Excusable neglect is an equitable concept that takes account of factors such as "prejudice, the length of the delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." TCI Group, 244 F.3d at 696 (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). This argument, therefore, largely overlaps with the issue of culpability. See Id. at 696-97. Because "good cause" is typically enough to demonstrate "excusable neglect," no reason exists to analyze these criteria separately. Id. at 696.

> Therefore, for similar reasons to those discussed above concerning good cause, we conclude that HRG did not establish excusable neglect. The entry of default and the default judgment were squarely within HRG's control. HRG received actual notice of both the action and Franchise Holding's intent to pursue it.

---

[12] Franchise Holding II, LLC. v. Huntington Restaurants Group, 375 F.3d 922, 926 (9th Cir. 2004).

> HRG nevertheless failed to file an extension or anything else with the district court until Franchise Holding began to collect on the default judgment.

The Ninth Circuit concluded that the trial court appropriately refused to set aside the default.

In this case, this court should similarly refuse to set aside the default. Defendant knew that an Answer had been required for fifteen months when the Motion for Entry of Default was filed. Defendant was aware of the Motion for Entry of Default and the Motion for Entry of Default Judgment because she was served with these documents. Defendant also knew of the Clerk's entry of default on December 27, 2006 because that was also served on her. Further, on January 2, 2007 the court, at Docket 124, instructed defendant that she needed to file a Motion to Set Aside Default. Defendant then waited another six weeks before she filed anything.

Finally, defendant was well aware of the status of settlement negotiations. Plaintiff wanted $100,000 to resolve the case, and plaintiff was willing to offer $5,000 - clearly there was a large enough gap between the parties that settlement did not appear likely. Additionally, plaintiff made it clear to defendant that it was still expecting an Answer from her.[13] All of this constitutes culpable conduct and would negate any "excusable neglect" according to the Ninth Circuit.

---

[13] Exhibit 4.

II. <u>Defendant Failed to Present Any Specific Facts that Would Constitute a Defense</u>

Second, the <u>Franchise</u> court viewed whether defendant had presented any specific facts that would constitute a defense.

> To justify vacating the default judgment, however, HRG had to present the district court with specific facts that would constitute a defense. *See* <u>Madsen v. Bumb</u>, 419 F.2d 4, 6 (9th Cir.1969). HRG never did this. Instead, it offered the district court only conclusory statements that a dispute existed. A "mere general denial without facts to support it" is not enough to justify vacating a default or default judgment. <u>Id</u>.
>
> Thus, denying HRG's motion on the second factor was well within the district court's discretion.[14]

In this case defendant was required to set forth specific facts that would constitute a defense. "Conclusory statements that a dispute [exists]" is not sufficient to overcome the defendant's burden of proof. That is precisely what defendant offered: "it is the position of the Estate of Ann Saephan that the question presented to the Court has been partially decided. Accordingly, the Estate of Ann Saephan has a meritorious defense and it should be heard by the court."[15] Defendant set forth <u>no</u> facts and <u>no</u> evidence. Defendant merely alleged that she believes she has a meritorious defense. According to the Ninth Circuit, this is insufficient to meet her burden.

The fact of the matter is defendant is unable to meet her burden because she has no evidence. Defendant alleges plaintiff

---

[14] <u>Franchise</u>, 375 F.3d at 926 (footnotes omitted).
[15] Motion at 5.

8

is liable to her for underinsured and uninsured motorist coverage by virtue of the fact that there was an alleged "drive by shooting." The facts do no support this allegation:

On Saturday, November 8, 2003, Saephan was a front seat passenger in Olivo's car.[16] Olivo was the driver of his Honda Civic vehicle that evening. There was a third person in the back seat of the car.[17]

At approximately 9 p.m., the Olivo vehicle was stopped in the parking lot of the Space Station, an arcade in Anchorage, Alaska.[18] The vehicle was facing south, with the front of the car pointed towards the Space Station, the rear of the car pointed at 27th Avenue.[19] As the Olivo vehicle was readying to leave the Space Station, shots were fired into the vehicle from behind the car. Saephan was shot in the back of the head and died as a result.[20] There is no evidence of whether the shooter was in a vehicle or on foot at the time of the shooting.

In order for there to be coverage for a shooting under a motor vehicle policy of insurance, Shaw v. State Farm, 19 P.3d 588 (Alaska 2001), as cited by defendant, requires a finding that the vehicle from which the shots were fired be shown to have been used by the shooter to stalk, trap, and ultimately

---

[16] Exhibit 1 to Docket 45, Deposition of Lai Saechao at 8-9.
[17] Exhibit 1 to Docket 45, Deposition of Lai Saechao at 14.
[18] Exhibit 1 to Docket 45, Deposition of Lai Saechao at 8-9.
[19] Exhibit 1 to Docket 45, Deposition of Lai Saechao at 12, and Exhibit 1 to her deposition.
[20] Exhibit 1 to Docket 45, Deposition of Lai Saechao at 9 and 44.

shoot the victim.  There is no such evidence in this case.  The court even granted defendant an additional seven months to conduct discovery to oppose the Motion for Summary Judgment and try and locate some semblance of evidence to support her allegations.[21]  Defendant conducted no discovery during that time.[22]  Defendant has no more evidence to support any of her theories than she had when this action was instituted in 2004.  Defendant has no meritorious defense.  The default should not be set aside.

III. <u>Plaintiff Will Be Prejudiced If The Court Sets Aside the Default</u>

Third, the <u>Franchise</u> court discussed prejudice to the plaintiff.  The court found there to be significant prejudice due to delay and the costs incurred as a result of defendant's conduct.

In this case, defendant alleges that there is no prejudice to plaintiff if the court sets aside the default.  This is untrue.  This matter was brought to a conclusion with the default.  Plaintiff is no longer obligated to defend against non-meritorious and unsupported claims for insurance coverage asserted by the defendant because of the default.

---

[21] *See* Docket 88.
[22] After the May 1, 2006 deadline, defendant did depose Charles Olivo, but it was not in the context of this case, it was in the underlying State Court action against Mr. Olivo.  Needless to say, Mr. Olivo's deposition provided no support for defendant's defenses or affirmative claims.

As this court might recollect, this suit was instituted two years and seven months ago to resolve a very simple insurance coverage dispute. As this court might also recollect, six months after this suit was filed, and at the same time defendant answered this action, defendant filed suit against plaintiff and two of plaintiff's former employees in state court alleging that by doing so she had defeated diversity in this action. The federal court judge at that time disagreed with this argument and maintained jurisdiction by order dated September 12, 2005. This case was at the end of the frivolous gamesmanship with the default. Plaintiff will be prejudiced if this court sets asides the default.[23]

IV. Conclusion

In summary, defendant engaged in culpable conduct. There was no excusable neglect. Defendant failed to present any facts or evidence of a meritorious defense. Finally, plaintiff will be prejudiced if the court sets aside the default. The court need not even find each of these matters to be true. If the court finds only one to be true, then the court can, in its discretion, decline to set aside the default. Plaintiff asks

---

[23] There is the argument that the prevailing party is generally awarded some portion of their fees and costs in such matters. However, the awards are generally only for partial fees and costs, and defendant is a judgment-proof estate that contains no assets. No fees and costs would likely be recoverable from the estate.

the court to decline to set aside the default and allow this matter to remain at its conclusion.

DATED this 16th day of February, 2007.

```
                              WILKERSON HOZUBIN
                              Attorneys for Plaintiff


                         By: s/Rebecca J. Hozubin
                              Rebecca J. Hozubin
                              310 K Street, Suite 405
                              Phone: 907 276-5297
                              Fax: 907 276-5291
                              E-mail: Rebecca@wilkersonlaw.net
                              Attorneys for Plaintiff Allstate
                              AK Bar No. 9806016
```

CERTIFICATE OF SERVICE

I hereby certify that on the
16th day of February 2007, a true
and correct copy of the foregoing
was electronically mailed to the following:

Robert D. Stone, Esq.
1049 W 5th Avenue, Suite 102
Anchorage, AK  99501


WILKERSON HOZUBIN

By:    s/Rebecca J. Hozubin

7500/127/plead/Opp to Mtn to Set Aside